**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
JESSE FUENTES,

                              Plaintiff,                    **OPINION & ORDER**

                -against-                                   **23-CV-4585 (JW)**

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                              Defendant.
-----------------------------------------------------------------X
**JENNIFER E. WILLIS, United States Magistrate Judge:**

Plaintiff Jesse Fuentes ("Fuentes") brings this action pursuant to 42 U.S.C. §

405(g) for judicial review of the final decision of the Acting Commissioner of Social

Security (the "Commissioner" or "Defendant") denying his application for social

security disability benefits ("SSD") under Title II of the Social Security Act. For the

reasons stated below, Plaintiff's motion is **GRANTED** and the case is remanded.

## BACKGROUND

### A. Procedural History

On August 26, 2020, Fuentes filed an application for SSD benefits alleging a

disability onset date of March 1, 2020. (Dkt. No. 17) (hereinafter "R. ___") at 231,

234.[1] Fuentes' application was initially denied on April 29, 2021, (R. at 69–82), and

denied a second time after reconsideration on July 7, 2021. R. at 83–97.

---

[1] All references to page numbers within the record are in accordance with the page
numbers of the PDF at which they appear, not the internal page numbers of
individual documents seen at the footer.

On December 7, 2021, Fuentes appeared at a telephone hearing before ALJ Michael Stacchini ("ALJ Stacchini"). R. at 37. In a decision dated February 2, 2022, ALJ Stacchini denied Fuentes' claim concluding that he was "not disabled under sections 216(i) and 223(d) of the Social Security Act." R. at 24. On April 4, 2023, the Appeals Council denied Fuentes' request to review ALJ Stacchini's decision. R. at 5. Fuentes then filed the complaint in this action on June 1, 2023. Dkt. No. 1. Now, before this Court is Fuentes' motion for remand for further administrative proceedings. Dkt. No. 21.

## B. Plaintiff's Background

Fuentes was fifty-three years and seven months old at his alleged disability onset date of March 1, 2020. R. at 69. He graduated from high school and then from the police academy. R. at 260. His past relevant work experience ("PRW") consists of three years as "operations supervisor," two years as "operations manager," and approximately nine years as "branch manager," all for an armored car service. R. at 23, 42, 79.

## C. Relevant Medical History

Fuentes has a lengthy history of medical visits and examinations, but the Court will only discuss in detail the medical history relevant to the arguments set forth in the motion.

### a.  Primary Care Provider Dr. Jahanara Reza

From November 2020 to October 2021, Dr. Reza acted as Fuentes' primary care provider and conducted near monthly visits.[2]  R. at 577–618.  Dr. Reza advised and/or treated Fuentes for a range of medical issues including acute cerebrovascular insufficiency, unilateral hearing loss in the left ear, primary osteoarthritis, and sleep apnea.  Id.

On October 27, 2021, Dr. Reza completed a physical medical source statement concerning Fuentes' symptoms and abilities.  R. at 796–99.  The statement indicates that Fuentes suffers from symptoms including back pain, bilateral hand pain, left side hearing loss, neck pain, numbness and tingling, and weakness.  R. at 796.  It then lists that he experiences pain when walking and bending while making a finding of tenderness and decreased range of motion.  Id.

The October medical source statement contains an assessment of Fuentes' functional limitations in a work environment which concludes Fuentes can stand for fifteen minutes before having to sit and may only stand for less than two hours in an eight-hour workday.  R. at 796–97.  The assessment also found that Fuentes can sit for thirty minutes at a time and may only sit for two hours total during an eight-hour workday.  Id.  Dr. Reza's assessment noted that Fuentes would need to take a break every hour for an unknown amount of time to manage pain and muscle weakness.  Fuentes' estimated time off task is listed as twenty-five percent or more.  R. at 799.

---

[2] Fuentes did not see Dr. Reza in January and March of 2021.

Other notable restrictions included that Fuentes can frequently lift and carry under ten pounds, occasionally ten pounds, rarely twenty pounds, and never fifty pounds or more.  R. at 798.  He can occasionally crouch or squat, rarely twist or bend, and never climb ladders or stairs.  In an eight-hour workday, he is limited to use of his arms for reaching in front of his body forty percent of the day and reaching overhead twenty percent of the day.  Id.  Fuentes is limited to using his hands and fingers thirty percent of the day to grasp, turn, twist, or for fine manipulation.  Id.

### b. Examining Consultant Kautilya Puri

On April 6, 2021, Dr. Puri performed a consultive internal medicine exam.  R. at 519.  Dr. Puri's examination noted that Fuentes' squat was "moderately halfway decreased" but his gait was normal, and he needed no help changing or maneuvering onto the exam table.  R. at 520.  Dr. Puri's ultimate findings were that Fuentes had no objective limitations other than "mild limitations to squatting, bending, stooping, kneeling, overhead reaching, and lifting weights."  R. at 522.

### c. Non-examining Consultants Dr. Gandhi and Dr. Vazquez Gonzalez

On April 29, 2021, Dr. S. Gandhi reviewed a limited portion of Fuentes' medical records and opined that he had no limitations other than communication issues and to avoid concentrated exposure to hazards.  R. at 69–78.  On July 6, 2021, upon reconsideration, reviewing the same limited portion of medical records, Dr. Vazquez Gonzalez affirmed the findings of Dr. Gandhi's assessment.  R. at 84–94.

### D. Plaintiff's Testimony

During a telephone hearing before ALJ Stacchini on December 7, 2021, Fuentes answered a series of questions regarding his ability to perform daily activities. R. at 37–68. When asked how he travels, Fuentes responded that he does "some driving" such as going to the grocery store but leaves long drives to his wife. R. at 44–45. He was then asked about daily chores where he revealed that he "does what he can handle at the moment," including "light dusting," loading the dishwasher, and vacuuming. R. at 45.

Fuentes also testified that his hobbies include reading books, but he cannot read for long before constant ringing from his hearing loss ruins his concentration. R. at 46. He also stated that he likes to "try to take some walks just to try to get some kind of exercise," but can only do so much before experiencing pain. R. at 46. He further explained that he can walk "maybe 20 minutes" and on a "really good day" he can walk a mile. R. at 47. However, he must rest for "at least an hour" to recover from his walks. R. at 63. When questioned about more strenuous activities, Fuentes testified that he is unable to ride a bike, lift weights, or do any bodyweight exercises. R. at 47–48.

Fuentes then spoke briefly about his previous job. R. at 49. Fuentes stated he was a part of mass layoffs and at the time he lost his job, he was still able to physically perform the job. R. at 49–50. He attempted to look for a new job until his physical condition deteriorated and he has not done any off-the-books or volunteer work since.

5

R. at 50–52.  He also explained he cannot socialize much because more than two voices becomes too much noise for him to handle.  R. at 51–52.

### E. ALJ Stacchini's Decision

On February 2, 2022, after a telephone hearing, ALJ Stacchini issued a decision denying Fuentes' claim.  R. at 11–29.  ALJ Stacchini evaluated Fuentes' claim under the standard five-step analysis.

At step one, ALJ Stacchini found that Fuentes had not engaged in substantial gainful activity since the alleged onset date of March 1, 2020. R. at 16.

At step two, ALJ Stacchini found Fuentes suffered from the following severe impairments: "left-sided hearing loss; acute cerebrovascular insufficiency; degenerative disc disease of the cervical spine; bilateral carpal tunnel syndrome; osteoarthritis of the hands; lateral epicondylitis of the elbows; left shoulder bursitis; status post left knee arthroscopy; obstructive sleep apnea; and obesity." R. at 16.

 At step three, ALJ Stacchini found Fuentes did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. at 17.

At step four, ALJ Stacchini found:

[Fuentes] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. He can frequently reach, handle, and finger.  The claimant should avoid unprotected heights and hazardous machinery.  He is limited to a moderate sound noise level, as it is defined in the DOT/SCO, in a job setting that does not require directional hearing, which is defined as an

> ability to determine the direction a sound is coming from without seeing
> or visualizing the source.

R. at 18.  In making the residual functional capacity ("RFC") determination, ALJ Stacchini considered evidence from the record including Fuentes' testimony, objective medical evidence, several medical opinions, and prior medical administrative findings.  R. at 18–23.

Regarding the non-examining consultants, ALJ Stacchini found the opinions of Dr. Gandhi and Dr. Vazquez Gonzalez "partially persuasive," as they "were not afforded the opportunity to examine the additional orthopedic treatment records, neurological testing, and imaging submitted at the hearing level."  R. at 22.  Those records include "additional impairment of the upper extremities, cervical spine, and lower extremities not factored into the initial and reconsideration assessments."  Id.

As for the examining consultant, ALJ Stacchini found Dr. Puri's opinion "generally persuasive," as it maintained consistency with Dr. Puri's examination and Fuentes' other treatment records.  R. at 22.

With respect to Fuentes' primary care provider, ALJ Stacchini found Dr. Reza's opinion "generally unpersuasive."  R. at 23.  ALJ Stacchini reasoned that Dr. Reza's opinion was not "well supported" by his previous exam notes, as they did not include "specific objective findings to corroborate such a reduced range of less than sedentary functioning."  Id.  ALJ Stacchinni also stated that Fuentes' orthopedic records support Dr. Reza's opinion "to a degree," but "the record as a whole indicates that the claimant could perform work at greater than even a sedentary level as noted by other

doctors." Id. ALJ Stacchini also noted that Fuentes' hearing testimony on daily living was "not consistent with such extreme limitations" set forth in Dr. Reza's functionality assessment. Id.

At step five, ALJ Stacchini found that Fuentes could perform his PRW as an operations or branch manager. R. at 23–24. As a result, ALJ Stacchini concluded that Fuentes was not disabled from March 1, 2020, through February 2, 2022. R. at 24.

## II.    LEGAL STANDARD

### A. Standard of Review

In reviewing a final decision of the SSA, "[t]he district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by substantial evidence." Intonato v. Colvin, No. 13-CV-3426 (JLC), 2014 WL 3893288, at *6 (S.D.N.Y. Aug. 7, 2014) (citing Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004)). The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lamay v. Commissioner of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including

contradictory evidence and evidence from which conflicting inferences can be drawn." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). If a reviewing court finds that there is substantial evidence supporting the Commissioner's decision, it must be upheld. <u>See</u> <u>Perez v. Chater</u>, 77 F.3d 41, 46 (2d Cir. 1996).

"On the basis of this review, the court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" <u>Intonato v. Colvin</u>, 2014 WL 3893288, at *6 (quoting 42 U.S.C. § 405(g)). "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand is warranted "for further development of the evidence" or for an explanation of the ALJ's reasoning. <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotations omitted). Additionally, an ALJ's "[f]ailure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." <u>Kohler v. Astrue</u>, 546 F. 3d 260,265 (2d Cir. 2008) (internal citations omitted).

### B. Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if they lack the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at § 423(d)(2)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1.  The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.  If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3.  If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.  If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.  If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

See Rolon v. Commissioner of Soc. Sec., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014) (citing Shaw v. Chater, 221 F.3d 126, 132 (2d Cir.2000)); see also 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; then the burden shifts to the Commissioner at step five. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. See Butts v. Barnhart, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## I.    DISCUSSION

Fuentes makes three arguments in his motion for remand: (1) the ALJ failed in his duty to develop the medical evidence; (2) the ALJ's conclusion of no disability is unsupported; and (3) he is unable to perform the jobs specified by the vocational expert. Discussed in detail below, the Court finds that the ALJ did fail to develop the record. No set number of evaluations or opinions is required, but in this case the ALJ discounted the treating physicians' opinion and relied on that of non-examining or single-examination consultants who had not reviewed the full medical record. Under these circumstances the ALJ should have obtained updated opinions. In addition, the ALJ's conclusions about whether Fuentes had a disability and his level of functionality were not supported by substantial evidence because he discounted the treating physicians opinion without cause and relied on functional assessments that were not sufficient. Given the rulings on issues one and two, the Court need not reach a decision on issue three.

### A. The ALJs Responsibility to Develop the Record

Before this Court can determine whether ALJ Stacchini was required to request additional medical source statements, it must first analyze whether the record was sufficient at the time of his decision.

### a. <u>Access to the Complete Record</u>

Fuentes asserts that Dr. Gandhi and Dr. Vazquez Gonzalez, the two non-examining physicians who acted as state agency consultants, did not review the orthopedic treatment records, neurological testing, and imaging that Fuentes submitted at the hearing level. Memorandum in Support of Motion to Remand ("Memo in Supp.") at 17. Fuentes also asserts that while Dr. Puri did examine him, Dr. Puri also did not review the additional records submitted at the hearing level. <u>Id.</u> at 18. As a result, Fuentes contends that none of the consulting sources relied on by the ALJ having access to the complete record constitutes reversible error. <u>Id.</u> (citing <u>Lewis v. Colvin</u>, 122 F. Supp. 3d 1, 8 (N.D.N.Y. 2015)).

Defendant argues that the Code of Federal Regulations ("CFR") does not require that an opining source review the entire record before rendering an opinion. Commissioner's Brief in Opposition to Plaintiff's Request ("Memo in Opp.") at 16. Defendant asserts that the focus is rather the overall supportability and consistency of the opinion. <u>Id.</u> Defendant cites to a footnote in <u>Camille v. Colvin</u>, where the court noted that the plaintiff failed to cite any authority that "imposes an unqualified rule that a medical opinion is superseded by additional material in the record." <u>Camille v. Colvin</u>, 652 F. App'x 25, 28 n.4 (2d Cir. 2016).

Fuentes is correct that Courts in this Circuit have previously found "great weight" should not be given to non-examining consulting sources "whose opinion is based on an incomplete record that lacks the opinion of the claimant's primary treating psychiatrist." Lewis v. Colvin, 122 F. Supp. 3d at 8; see also Ballard v. Comm'r of Soc. Sec., No. 19-CV-673 (PED), 2020 WL 1031908, at *18 (S.D.N.Y. Mar. 2, 2020).

However, in 2017, the regulations governing an ALJ's evaluation of medical opinions changed in an effort to rid the perceived hierarchy of medical sources. See Jackson v. Kijakazi, 588 F. Supp. 3d 558, 578 (S.D.N.Y. 2022). ALJs no longer assign weight to a medical opinion, but instead "evaluate their persuasiveness based on the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any other factor that tends to support or contradict a medical opinion." Id. (cleaned up) (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416 920c(a)–(c)).

As Defendant noted, supportability and consistency are the two most important factors considered when evaluating the persuasiveness of a medical source's medical opinion. 20 C.F.R. §§ 404.1520c(b)(2). An ALJ may, but is not required to, discuss the three remaining factors. Id.

While the Second Circuit in Camille v. Colvin, indeed noted that the plaintiff failed to identify "an unqualified rule that a medical opinion is superseded by additional material in the record," they also noted an outdated opinion may be

13

rendered stale if new material raises doubts about the reliability of the opinion. Camille v. Colvin, 652 F. App'x 25, 28 n.4 (2d Cir. 2016).

Here, ALJ Stacchini found the opinions of Dr. Gandhi and Dr. Vazquez Gonzalez consistent with each other but were only partially persuasive due to their inability to review the entire record. R. at 22. ALJ Stacchini notes that the missing information "shows additional impairment of the upper extremities, cervical spine, and lower extremities not factored into the [] assessments." Id. The missing information comprises 245 pages of the total record of 800 pages. See R. at 555–800.

ALJ Stacchini found Dr. Puri's opinion from his consultive exam, conducted around the same time as Dr. Gandhi and Dr. Vazquez Gonzalez's opinions, "generally persuasive" as it was consistent with his exam and supported by Fuentes' orthopedic treatment records. R. at 22. ALJ Stacchini omitted that Dr. Puri's opinion was also made without the additional evidence described above. Moreover, Dr. Puri opined that Fuentes was "mildly limited" in certain activities—language courts have found to be insufficient without more specificity. See Romero v. Commisioner of Soc. Sec., No. 18-CV-10248 (KHP), 2020 WL 3412936, at *13 (S.D.N.Y. June 22, 2020).

In light of the consulting examiners inability to review the additional records and Dr. Reza's subsequent assessment which reaches a more restrictive functionality, this Court finds that the additional material raises concerns about the reliability of the consulting examiners' opinions.

"Medical source opinions that are stale and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Santana v.

<u>Kijakazi</u>, No. 21-CV-1041 (SLC), 2022 WL 19560948, at *19 (S.D.N.Y. July 29, 2022), <u>report and recommendation adopted</u>, No. 21-CV-1041 (ER), 2023 WL 3004969 (S.D.N.Y. Jan. 23, 2023) (cleaned up) (citing <u>Camille v. Colvin</u>, 104 F. Supp. 3d 329, 343–44 (W.D.N.Y. 2015), <u>aff'd</u>, 652 F. App'x 25 (2d Cir. 2016). Therefore, ALJ Stacchini erred in relying on the outdated opinions of the consulting examiners. <u>See Adamu v. Comm'r of Soc. Sec.</u>, No. 21-CV-1936 (PKC), 2024 WL 1259242, at *3 (E.D.N.Y. Mar. 25, 2024) (finding the ALJ's RFC was not supported by substantial evidence after relying on consulting sources who did not review all evidence in the record).

**b. The ALJs Responsibility to Develop the Record**

Fuentes argues that ALJ Stacchini failed to develop a complete record when he failed to obtain medical source statements on Fuentes' ability to perform "substantial gainful activity" in an eight-hour workday. Memo in Supp. at 16–17. Specifically, Fuentes contends ALJ Stacchini should have sought medical source statements regarding his ability to work from: (1) Dr. Ravi, the consulting examiner for his hearing issues; (2) Dr. Juliano, the treating doctor for his elbow and shoulder pains; and (3) any medical source related to his neck and hands. <u>Id.</u>

First, Defendant highlights that Fuentes' counsel asked the ALJ to hold the record open and later informed the ALJ that "the medical record is complete, please move forward with making your decision." Memo in Opp. at 10. Defendant asserts that courts have described a plaintiff making the argument that the ALJ failed to develop the record after advising the ALJ it was complete, as "disingenuous." <u>Id.</u>

(citing <u>Lindsay B. v. Comm'r of Soc. Sec.</u>, 2021 WL 4912588, at *3–4 (W.D.N.Y. Oct. 21, 2021).  Defendant then argues that the ALJ need not base his decision on a medical opinion but show that the decision was supported by substantial evidence in the record.  <u>Id.</u>  (citing <u>Monroe v. Comm'r of Soc. Sec.</u>, 676 F. App'x 5, 7-8 (2d Cir. 2017) (summary order)).  Lastly, Defendant argues the CFR was amended in 2017, clarifying that the ALJ has no regulatory requirement to develop the record with opinions from a plaintiff's treating sources.  <u>Id.</u> at 11–12.  As a result, Defendant asserts that the burden to obtain source statements from treating professionals rests with the plaintiff.  <u>Id.</u> at 11.

The Second Circuit has traditionally held that an ALJ must affirmatively develop the record and that such duty arises from the "Commissioner's regulatory obligations to develop a complete medical record before making a disability determination." <u>Pratts v. Chater</u>, 94 F.3d 34, 37 (2d Cir. 1996); see also <u>Miller v. Comm'r of Soc. Sec. Admin.</u>, 784 F. App'x 837, 839 (2d Cir. 2019) (summary order).

Prior to March 2017, the CFR stated that the agency would "make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d).  The previous accompanying definition of medical report included "[a] statement about what you can still do despite your impairment(s)" based on the plaintiff's medical history." 20 C.F.R. § 404.1513(b).  It also stated, "[a]lthough we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete." <u>Id.</u>

16

Currently, the CFR reads, "[w]e will make every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain your medical sources' evidence when you give us permission to request the reports."  20 C.F.R. § 404.1512 (b).  And the accompanying categories of "medical evidence" includes medical opinions.  20 C.F.R. § 404.1513 (2).

Medical opinions are then defined as:

> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:

> (i)    Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

> (ii)   Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

> (iii)  Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

> (iv)   Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

Id.  Notably, the March 2017 regulations no longer include language explicitly stating that the agency "will request a medical source statement about what you can still do despite your impairment(s)."  Furthermore, even when the regulations "seem[ed] to impose on the ALJ a duty to solicit such medical opinions" the Second Circuit still

noted "remand is not always required when an ALJ fails in his duty to request opinions." Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33 (2d Cir. 2013).

Since the March 2017 change, courts in this Circuit have held that when determining a plaintiff's RFC, an ALJ's "failure to request a functional assessment when no such assessment exists in the record or when any such assessments are insufficient constitutes a failure of his duty to develop the record." Jackson v. Kijakazi, 588 F. Supp. 3d 558, 583 (S.D.N.Y. 2022); see also Acosta Cuevas v. Comm'r of Soc. Sec., No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *11 (S.D.N.Y. Jan. 29, 2021), report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec., No. 20-CV-0502 (KMW) (KHP), 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).

Here, the Record contained a sufficiently detailed functional assessment from Dr. Reza, Fuentes' primary care provider (R. at 796–99), but ALJ Stacchini concluded Dr. Reza's opinion was "generally unpersuasive." R. at 23. ALJ Stacchini noted the opinion was "not well supported" by Dr. Reza's own notes and "not consistent" with other evidence in the record. R. at 23. An ALJ, in some circumstances, can reject a physician's opinion and make an RFC determination without a medical opinion that supports the ALJ's decision but only where the record contains sufficient evidence to do so. See Monroe, 676 F. App'x at 8 (summary order). However, as discussed below, there was insufficient evidence to support the ALJs findings and therefore the ALJ should have further developed the record.

**B. ALJ Stacchini's Findings of No Disability and that Plaintiff Can Perform Light Work**

Fuentes avers that ALJ Stacchini's findings regarding all medical opinions were "unreasonable and left voids in the record such that there is no substantial support for the RFC and the ultimate conclusion of no disability." Memo in Supp. at 22.

Defendant counters that a plaintiff bears the burden of showing he is precluded in his ability to perform substantial gainful activity and substantial evidence in the record supported ALJ Stacchini's decision to the contrary. Memo in Opp. at 23. Defendant also argues that Fuentes failed to show ALJ Stacchini committed any legal error in making his decision. Id.

Again, ALJ Stacchini may reach a conclusion contrary to Dr. Reza, without any supporting competent medical sources, if the record was sufficient to do so. Monroe, 676 F. App'x at 8 (summary order). In Monroe, the Second Circuit found that the ALJ could rely on the physician's contemporaneous medical notes to reject the physician's assessment and support the ALJ's contrary RFC determination. Id. at 8–9. The physician's notes on the patient's functional capacity included "snowmobile trips, horseback riding, and going on multiple cruise vacations," directly contradicting the physicians assessment. Id. at 8.

Here, ALJ Stacchini discounts Dr. Reza's functionality assessment in a conclusory manor stating that Dr. Reza's notes "do not include specific objective findings to corroborate" Dr. Reza's RFC finding. R. at 23. This is far from Monroe,

19

where the notes contained "outright contradictions, thereby seriously undermining the treating physician's opinion" and therefore is not sufficient. See Pagan v. Berryhill, No. 16 CIV. 3774 (ER), 2017 WL 4174815, at *6 (S.D.N.Y. Sept. 20, 2017) (citing Monroe, 676 F. App'x at 7–8).

Regarding ALJ Stacchini's reliance on the opinions of other doctors, discussed above, the consulting RFC determinations in this matter were insufficient. Supra section I(A)(a).

Finally, ALJ Stacchinni found that Fuentes' testimony undermined Dr. Reza's suggested functional limitations. R. at 23. Fuentes testified that he could walk "maybe 20 minutes," take short drives, perform "light dusting", and sometimes loads the dishwasher. R. at 44–47. While this Court does not substitute its judgement for ALJ Stacchini's on whether this contradicts Dr. Reza's limitations, this alone is not substantial evidence to support ALJ Stacchini's findings. See Berryhill, 2017 WL 4174815, at *6–7 (finding the alleged inconsistencies between plaintiff's statements and the treating physician's findings did not amount to substantial evidence).

Considering the above, ALJ Stacchini's finding that Fuentes was capable of performing light work was not supported by substantial evidence.

## C. Plaintiff Ability to Perform Past Relevant Work Experience

Given this Court's finding that ALJ Stacchini's RFC was not supported, we need not reach the issue of whether Fuentes could perform his PRW. Supra section I(B).

### **CONCLUSION**

This Court finds that ALJ Stacchini's RFC determination was not supported by substantial evidence. More specifically, ALJ Stacchini erroneously relied on insufficient consulting opinion evidence and dismissed the opinion of Fuentes' primary care provider without sufficient evidence to do so. Therefore, remand is required. For the foregoing reasons, Plaintiff's Motion (Dkt. No. 21) is **GRANTED**.

SO ORDERED.

DATED:    New York, New York
          September 30, 2024

JENNIFER E. WILLIS
United States Magistrate Judge

21